John Kivo v. Commissioner.
Kivo v. Commissioner
Docket No. 54192.
United States Tax Court
T.C. Memo 1956-227; 1956 Tax Ct. Memo LEXIS 73; 15 T.C.M. (CCH) 1190; T.C.M. (RIA) 56227; September 28, 1956
*73 Petitioner was engaged in the artificial flower business through a partnership comprised of himself, his wife, and his son-in-law during the years 1945, 1946, and 1947. Petitioner caused 25 per cent of the net profits of the partnership to be paid to his son, who was actively engaged in the practice of dentistry during those years. Held, petitioner's son was not a partner, and the respondent correctly determined that the portion of net partnership profits paid to him during 1945, 1946, and 1947 was taxable income to the petitioner. Charles E. Scribner, Esq., 40 Wall Street, New York, N. Y., for the petitioner. Charles B. Markham, Esq., and Ellyne E. Strickland, Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion This proceeding involves the following deficiencies in income tax: Year
Deficiency
1945
$16,527.99
1946
19,688.55
1947
16,908.92
The sole issue is whether petitioner's son was entitled to 25 per cent of the net profits of the partnership, John Kivo & Company, during its fiscal years ended September 30, 1945 and 1946 and for the fiscal period ended August 23, 1947. Some of the facts were stipulated. *74 Findings of Fact The stipulated facts are so found and are incorporated herein by this reference. Petitioner was engaged in business in the City of New York during the years in issue. His individual Federal income tax returns for such years were filed with the former collector of internal revenue for the third district of New York. Petitioner has been engaged for many years in the artificial flower business. Early in 1934, he and his daughter, Ethel, became the owners of all of the capital stock of a corporation in which petitioner had previously been a stockholder. Such capital stock consisted of 100 shares of common stock, 50 of which were held by petitioner and 50 of which were held by Ethel. The name of the corporation was changed to John Kivo, Inc. It was through the medium of this corporation that petitioner conducted his artificial flower business. Early in 1938, petitioner transferred 25 shares of his stock to his wife, Leah, and caused his daughter, Ethel, to transfer 25 shares of her stock to his son, Aaron. At that time Ethel was twenty-nine years old and Aaron was twenty-six. Aaron was a student at Long Island University from 1930 to 1934. He took a pre-dental *75 course and received a B.S. degree in chemistry. He entered New York University Dental School in 1935 and received a D.D.S. degree in 1939. He entered the Army as a dental officer and was on active duty from August 1942 until August 1945. Prior to World War II, petitioner had experienced substantial competition from foreign artificial flower manufacturers but with the advent of the war, that competition ceased and his business substantially increased. Because of the increased volume of business it was necessary for him to bring another person into the business. He persuaded his son-in-law, Milton Garfunkel, to come in with him. On October 1, 1944, petitioner, Leah, and Milton entered into a partnership agreement, the pertinent parts of which are set forth below: "John Kivo is the substantial owner and controls the business of John Kivo Inc. which has discontinued active operations as of this day. "The parties are desirous of becoming partners in the manufacture, sale and distribution of artificial flowers and allied items and mere generally to engage in the business heretofore done by John Kivo Inc. * * *
"4. John Kivo will cause John Kivo Inc. to transfer its lease or *76 sublease to the premises to the partnership; to lease its machinery to the partnership and to sell merchandise on hand at cost. "5. The contribution of the respective partners to the capital of the partnership shall be as follows and shall not bear interest: "John Kivo - Six Thousand ($6,000.) Dollars; Leah Kivo - Three Thousand ($3,000.) Dollars; Milton Garfunkel - Three Thousand ($3,000.) Dollars. "6. An account in the name of the partnership shall be maintained in such bank or banks in the City of New York as John Kivo shall select. All moneys of the partnership and all instruments for the payment of money to the partnership shall, when received, be deposited in the bank account or accounts of the partnership and shall be subject to withdrawal only by check made in the name of the partnership and signed by John Kivo. * * *
"9. Each party shall be entitled to draw as salary from the funds of the partnership the following: "John Kivo - Fifteen Thousand ($15,000.) Dollars per annum in weekly installments; Milton Garfunkel - Seventy-Five Hundred ($7,500.) Dollars per annum in weekly installments; Leah Kivo - Fifty-two Hundred ($5,200) Dollars per annum in weekly *77 installments. "In the event the earnings shall be insufficient to pay such salaries, a lesser amount shall be paid in the same proportion as herein fixed. Such drawings shall be charged against the respective shares of the net profits of the parties, which shares of net profits are as hereinafter set forth. "10. The net profits of the partnership shall be divided as follows: "John Kivo - Fifty per cent. (50%) Leah Kivo - Twenty-five per cent. (25%) Milton Garfunkel - Twenty-five per cent. (25%) "11. Neither party, other than John Kivo, shall, without the written consent of the others, make, execute, deliver, endorse or guarantee any commercial paper or agree to answer for or indemnify against any act, debt, default or miscarriage of any person, partnership, association or corporation. * * *
"14. John Kivo is herewith granted the option to purchase the share and interest of each of the other parties hereto at book value at the end of any six month period upon two (2) weeks' prior written notice." The new partnership, John Kivo & Company, conducted the artificial flower business formerly conducted by John Kivo, Inc. The partnership paid the corporation $2,460 for *78 its inventories, which sum was the cost basis thereof. It paid the corporation a small rental for its fixed assets for a period of three years, at the end of which time the assets were fully depreciated and were taken over by the partnership without further payment. The customers of the corporation were advised that the partnership was taking over the artificial flower business. The corporation, John Kivo, Inc., however, was not dissolved upon the formation of the partnership but continued in existence and conducted a jobbing business. It finally dissolved in 1950, at which time Aaron received $4,718.05 as his 25 per cent share of its assets. He reported a capital gain on the liquidation on his Federal income tax return for that year. At some time subsequent to the execution of the partnership agreement dated October 1, 1944, a rider to such agreement was prepared which recited that inasmuch as Aaron was in the armed services and could not take an active part in the partnership's business, he was not to receive a salary from the partnership nor considered to be a partner. The rider further stated that he was to receive a share of the net profits of the partnership after deducting *79 all expenses, including an allowance for partners' salaries, such share to be one-half of his father's 50 per cent share. At the end of its fiscal year, September 30, 1945, Aaron was credited with $19,885.49, which represented 25 per cent of the partnership's net income after the deduction of salaries for petitioner, Leah, and Milton. Such amount was deducted by the partnership on its information return as commissions. Aaron returned from the armed services in August 1945, and at all times thereafter was solely engaged in the practice of dentistry. He at no time participated actively in the affairs of John Kivo & Company. At some undertermined time, a partnership agreement was executed by petitioner, Aaron, Leah, and Milton. Such agreement, dated October 1, 1945, purported to make Aaron a 25 per cent partner in John Kivo & Company. Aaron's purported capital investment in such partnership was $14,885.49, the undrawn sum remaining of the partnership profits credited to him for the fiscal year 1945. Such sum was withdrawn by Aaron prior to December 31, 1945. For its fiscal year ended September 30, 1946, the partnership credited Aaron with a 25 per cent share of its net profits in *80 the amount of $25,689.26. He was likewise credited with a 25 per cent share of the partnership's net profits in the amount of $23,393.77 for the fiscal period ended August 23, 1947. Petitioner's wife, Leah Kivo, died on August 23, 1947, and as of that date petitioner and his son-in-law, Milton, executed a new partnership agreement to carry on the artificial flower business. The pertinent parts of such agreement are set forth below: "A written agreement of partnership dated as of the 1st day of October, 1944, was heretofore made between the parties hereto and Leah Kivo. Such agreement provided in paragraph 13 hereof as follows: * * *
"6. An account in the name of the partnership shall be maintained in such bank or banks in the City of New York as John Kivo shall select. All moneys of the partnership and all instruments for the payment of money to the partnership shall, when received, be deposited in the bank account or accounts of the partnership and shall be subject to withdrawal only by check made in the name of the partnership and signed by John Kivo. * * *
"9. Each party shall be entitled from the funds of the partnership as follows: Two-thirds (2/3) of the net *81 profit to John Kivo and such other as he may indicate, and one-third (1/3) to Milton Garfunkel. Weekly drawings as salary from such net profits shall be as follows: John Kivo $300.; Milton Garfunkel $200. The above percentage of division of profits and of losses shall take effect after payment of weekly salaries herein fixed." Petitioner at that time also arranged to have $50 paid to Aaron each week, which sum was charged against petitioner's partnership account. On his individual income tax returns for 1945, 1946, and 1947, Aaron reported and paid tax on the amount of partnership profits credited to him, all of which he ultimately received. The respondent determined that the profits so credited to Aaron and eventually paid to him constituted partnership income of the petitioner. Aaron was not a partner in John Kivo & Company during the fiscal years 1946 and 1947, nor was he a partner in a sub-partnership with petitioner during the fiscal year 1945. Opinion RICE, Judge: At the hearing, petitioner testified "I am the father and what I do, my children don't go against me." We are satisfied that the petitioner's complete dominance over his children, insofar as all aspects of *82 his business are concerned, is the most significant fact which emerges from this record. We are convinced that because of that dominance, there was no partnership in which petitioner's son, Aaron, participated during any of the three years here in issue, and that the amounts of partnership profits paid to Aaron were correctly determined by respondent to be taxable income of the petitioner. The petitioner conceded that Aaron was not a partner in John Kivo & Company for the fiscal year ended September 30, 1945, because at the time that partnership was formed, Aaron was overseaas in the armed forces and therefore "was not present to give his consent" and did not participate in any way in the formation of the partnership. That he could not be a partner under such circumstances seems well settled in the light of the Supreme Court's language in . Petitioner, nevertheless, contends that Aaron was entitled to a 25 per cent share of the partnership's net profits for that year. He argues, first, that he and the other partners were accountable to Aaron for a 25 per cent share of partnership profits, because Aaron had been a 25 per *83 cent stockholder of John Kivo, Inc., and since the partnership had taken over the corporation's business, they would have been liable had Aaron brought a suit in equity against them for conversion of the corporation's business. If that were so, petitioner would still be taxable on his full 50 per cent share of partnership profits, but we assume he meant to argue further that he would, in turn, have been entitled to a deduction for any amount which he might have paid had there been an equity proceeding brought, and recovery had, by Aaron. In any event, we think this argument without merit. There was no equity proceeding brought by Aaron nor did he even suggest the assertion of a claim for a share of partnership profits. To ask that we determine the taxability of these partnership profits on the assumption that such a suit could have been brought would necessitate our unwarranted speculation as to the whole factual framework upon which such a cause of action might have been based and recovery had. We decline to do so. The second argument which petitioner advanced with respect to the fiscal year ended September 30, 1945, is that there was a subpartnership between Aaron and himself *84 which entitled Aaron to one-half of the petitioner's profits. In support of that argument petitioner cites (C.A. 2, 1952), remanding Memorandum Opinion of this Court dated April 7, 1950 [; (C.A. 7, 1949); and . Those cases are so clearly distinguishable from the one before us that no purpose would be served by a comparison of the facts there with those here. We think this argument must fail for the same reason petitioner gave for conceding that Aaron was not a partner in John Kivo & Company during this fiscal year. Aaron was overseas in 1944 and there is no convincing evidence that he and his father had any subpartnership agreement as petitioner contends. All that Aaron knew about the formation of any partnership was that one had been formed between his father, his mother, and Milton, and that his father would take care of him. That petitioner said he would do so evidences nothing more than the suggestion that a gift of some kind would eventually be made to Aaron. The rider to the partnership agreement *85 of 1944 also suggests nothing more than that. With this argument, as with the one which petitioner makes for recognition of Aaron as a partner for the latter two years in issue, he seems to think that simply because he calls something by a name it becomes so in fact. That assumption overlooks the well established criteria for determining the existence of a family partnership established by - that the parties, in good faith and acting with a business purpose, intended to join together in the present conduct of the enterprise. That of course means an intent on the part of all of the alleged partners - not just on the part of the one who stands to gain a substantial tax benefit from the creation of the partnership. Here we find no intention to create a sub-partnership between Aaron and petitioner. So, also, are we unable to find any intention to create a partnership which would include Aaron for the fiscal year ended September 30, 1946, and the fiscal period ended August 23, 1947. Neither petitioner nor any other witness could remember when the so-called 1945 partnership agreement was executed. But even assuming it was executed on October 1, 1945, we *86 do not think it evidence of a bona fide intent to form a partnership which would include Aaron. The formal trappings of a partnership were thrown about the distribution of partnership profits to Aaron, but there is no substance beneath those trappings. We think it clear on this record that the amounts which Aaron received in 1945, 1946, and 1947 were gifts from petitioner and nothing more. Aaron was never, at any time, a partner in John Kivo & Company; he was a dentist who actively practiced his profession during those years. Petitioner was an abundantly generous father, as evidenced by the fact that in 1947, when a new partnership was formed between petitioner and Milton, petitioner arranged to have $50 each week paid to Aaron, as Aaron said, "to maintain me while I was practicing and setting up my wife in a house and so forth." But certainly there is no reason for the Government to underwrite the petitioner's generosity. Fifty per cent of the net profits of the partnership, John Kivo & Company, were earned by petitioner and were taxable to him during each of the years in issue, even though he chose to give half of those profits to someone else. . *87 See . Decision will be entered for the respondent.